# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| Evan Ratcliff, | Case No. 2:21-cv-01155-CDS-BNW |
| Plaintiff | **Order Granting Defendant's Motion for Summary Judgment and Denying Plaintiff's Motion for Summary Judgment** |
| v. | |
| Carlos Caldarone, | [ECF Nos. 58, 62] |
| Defendant | |

This is a 42 U.S.C. § 1983 civil rights action brought by incarcerated plaintiff Evan Ratcliff, alleging that defendant Carlos Caldarone (1) was deliberately indifferent to his dental needs while he was housed at the Southern Desert Correctional Center (SDCC), and (2) that Caldarone's delay, and inadequacy of treatment constitute retaliation against Ratcliff for exercising his First Amendment rights to issue inmate requests and grievances seeking dental care. Am. compl., ECF No. 50. On February 5, 2024, both Caldarone and Ratcliff moved for summary judgment. Caldarone mot. summ. j., ECF No. 58; Ratcliff mot. summ. j., ECF No. 62. Caldarone moved for summary judgment, arguing that Ratcliff failed to exhaust his administrative remedies prior to filing this suit, and that in either event, he is entitled to qualified immunity. ECF No. 58. Ratcliff moved for summary judgment arguing that Caldarone's actions constituted deliberate indifference under the Eighth Amendment. ECF No. 62. Caldarone filed his response to Ratcliff's motion for summary judgment on February 23, 2024. ECF No. 63. Ratcliff filed his response to Caldarone's motion for summary judgment on February 26, 2024. ECF No. 64. Because I find that Ratcliff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act (PLRA), defendant Caldarone's motion for summary judgment is granted. Consequently, Ratcliff's motion for summary judgment is denied.

## I.   Legal standard

Summary judgment is appropriate when the pleadings and admissible evidence "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). The court's ability to grant summary judgment on certain issues or elements is inherent in Federal Rule of Civil Procedure 56. *See* Fed. R. Civ. P. 56(a). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). A fact is material if it could affect the outcome of the case. *Id.* at 249. At the summary judgment stage, the court must view all facts and draw all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fischbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). The movant need only defeat one element of a claim to garner summary judgment on it because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 322.

## II.   Background

### A.  Ratcliff's Eighth Amendment deliberate indifference claim

In his amended complaint,[1] Ratcliff alleges that during the time period between November 20, 2020, and February 6, 2021, while he was in custody at SDCC, he suffered from dental ailments involving a "diseased, infected and/or injured tooth and gum." ECF No. 50 at ¶ 8. Ratcliff alleges that these dental issues[2] caused him distress and that despite issuing several inmate requests forms (known as "kites") and grievances, Caldarone ignored the request for treatment or failed to treat Ratcliff appropriately. *Id* at ¶¶ 9–12; *see* Pl.'s Exs. 2–14, ECF Nos. 62-3

---

[1] Unless otherwise noted, the court only cites to the amended complaint to provide context to this action, not to indicate findings of fact.

[2] Ratcliff's dental issues began in or around February of 2019. *See* Def.'s Ex. B (sealed), ECF No. 60-2 at 2.

to 62-15; Pl.'s Exs. 16–18, ECF Nos. 62-17 to 62-19. Ratcliff further alleges that because of Caldarone's failure to properly treat him, he was compelled to pull out his own tooth. Pl.'s Ex. 11, ECF No. 62-12. However, Ratcliff was unable to pull out the entirety of his tooth, so he submitted a kite requesting to see Caldarone because there was still dental tissue within his gums, which was causing him a great deal of pain. *Id.* Ratcliff filed an informal grievance requesting to be seen by Caldarone on December 10, 2020. Pl.'s Ex. 12, ECF No. 62-13. After still not being seen, Ratcliff filed an emergency grievance on January 8, 2021. Pl.'s Ex. 14, ECF No. 62-15. Ratcliff was seen by Caldarone that same day. ECF No. 50 at ¶ 17; Def.'s Ex. 62-16 (medical notes indicating Ratcliff was seen on 1/8/21); Def.'s Ex. 62-20 (NDOC response to grievance indicating Ratcliff was seen on 1/8/21). Ratcliff alleges that during the appointment, Caldarone made a derogatory remark when he told Ratcliff that the next time he had a loose tooth, he should find some pliers and remove the tooth himself instead of seeking dental treatment. ECF No. 50 at ¶ 17. Ratcliff alleges that the above facts amount to deliberate indifference on the part of Calderone to treat Ratcliff, a violation of his Eighth Amendment rights.

**B.  Ratcliff's First Amendment claim**

Ratcliff also alleges that Calderone's delay in treating Ratcliff was retaliation for Ratcliff's multiple kites and emergency grievances seeking necessary dental/or medical care—which violates the First Amendment. *Id.* at ¶¶ 44–45. He further alleges that Caldarone's delay in treatment and statement suggesting that Ratcliff use pliers to fix his tooth pain were done to keep Ratcliff from issuing further kites and grievances for dental treatment that the prison was obligated to provide, a violation of his First Amendment rights. *Id.*

**C.  Relevant timeline relating to Ratcliff's tooth pain and Grievance #20063114931.**

- **August 5, 2019:** Ratcliff sends a kite to the dental department asking to be seen for a bad toothache. Def.'s Ex. B, ECF No. 60-2 at 3 (sealed).

- **August 6, 2019:** Caldarone sees Ratcliff[3] and recommends that his tooth be extracted. Def.'s Ex. C, 60-3 at 7 (sealed). Ratcliff refuses the extraction and signs a refusal to consent form. *Id.*

- **November 18, 2019 – January 11, 2020:** Ratcliff sends more kites to the dental department seeking treatment other than extraction. Def.'s Ex. B, ECF No. 60-2 at 4–8 (sealed). Ratcliff signs another refusal to consent to the extraction on February 12, 2020. Def.'s Ex. C, ECF No 60-3 at 8 (sealed).

- **November 20, 2020:** Ratcliff sends a kite to the dental department and asks that his tooth be pulled. Def.'s Ex. B, ECF No. 60-2 at 9 (sealed). The department responds and says that due to the Covid-19 pandemic and social distancing restrictions, the department was only scheduling urgent dental issues for units that were not on quarantine. *Id.; see also* Pl.'s Ex. 9, ECF No. 62-10 at 2.

- **November 24, 2020:** Ratcliff sends another dental kite asking for the tooth to be pulled. Def.'s Ex. B, ECF No. 60-2 at 10 (sealed); Pl.'s Ex. 10, ECF No. 62-11.

- **December 1, 2020:** Ratcliff is prescribed antibiotics and pain medication, which he receives on the same day. Def.'s Ex. F, ECF No. 60-4 (sealed); Def.'s Ex. G, ECF No. 60-5 at 2 (sealed).

- **December 10, 2020:** Ratcliff files another kite and states that he pulled out his own tooth without getting the entire tooth out of his mouth. Def.'s Ex. B, ECF No. 60-2 at 11 (sealed). The department responds to the kite reiterating to Ratcliff that only urgent dental issues were being scheduled due to the pandemic. *Id..;* Pl.'s Ex. 11, ECF No. 62-12. Ratcliff files informal grievance #20063114931. Pl.'s Ex. 12, ECF No. 62-13; Def.'s Ex. J, ECF No. 58-6 at 3. The remedy he requests is to be seen by Caldarone. Pl.'s Ex. 12, ECF No. 62-13 at 3.

---

[3] *See* Def.'s Ex. B, ECF No. 60-2 at 3 (handwritten notation "seen 8/6/19 refused ext #6 CB").

- **December 28, 2020:** Ratcliff sends another kite asking to be seen by the dentist for pain relating to the tooth he pulled. Pl.'s Ex. 13, ECF No. 62-14 This kite is again responded to by saying that only urgent dental issues were being scheduled because of the pandemic. *Id.*

- **January 8, 2021:** Ratcliff files an emergency grievance detailing his pain and reiterates his request to be seen by Caldarone. Pl.'s Ex. 14, ECF No. 62-15. The staffer who reviews the grievance finds that it is not considered an emergency under AR 740. *Id.* Caldarone sees Ratcliff on the same day, the remainder of Ratcliff's tooth was extracted, and he was given pain medication. Def.'s Ex. C, ECF No. 60-3 at 3 (sealed); Def.'s Ex. F, ECF No. 60-4 at 2 (sealed); Pl.'s Ex. 19, ECF No. 62-20.

- **January 14, 2021:** Ratcliff submits another emergency grievance complaining of a suspected infection and requesting antibiotics. Pl.'s Ex. 16, ECF No. 62-17 at 2. He is told to send a medical kite and make an appointment. *Id.* Caldarone orders antibiotics for Ratcliff. Def.'s Ex. G, ECF No. 60-5 at 3 (sealed).

- **January 15, 2021:** Ratcliff files another emergency grievance complaining of an abscess and pain. Pl.'s Ex. 17, ECF No. 62-18. Ratcliff receives the antibiotics. (notation at bottom of emergency grievance indicating "[d]entist ordered medication from your grievance 1/14/21 please pick up medication..."). *Id.*

- **January 21, 2021:** Ratcliff sends another kite claiming that there are still pieces of his tooth leftover from his self-extraction that were not removed. Pl.'s Ex. 18, ECF No. 62-19.

- **January 30, 2021:** NDOC denies Ratcliff's informal grievance because he was seen by Caldarone. Pl.'s Ex. 19, ECF No. 62-20; Def. Ex. J, ECF No. 58-6 at 2. Ratcliff is told to submit a medical kite for any further dental issues. *Id.*

- **March 19, 2021**: Ratcliff files a first-level grievance to appeal informal grievance #20063114931. Pl.'s Ex. 21, ECF No. 62-22 at 2. In the first-level grievance, Ratcliff states, for the first-time, that he believes that Caldarone was retaliating against him, and requests that Caldarone be reprimanded for not treating patients with respect. *Id.* at 4; *see also* Def.'s Ex. J, ECF No. 58-6 at 8–9.

- **March 19, 2021**: NDOC refuses to accept the first-level grievance because Ratcliff added the retaliation claim and changed the remedy sought from the December 10, 2020, informal level (to be seen by the dentist) to the March 19, 2021, first-level (for Caldarone to be reprimanded) which constitutes an abuse of the process. Pl.'s Ex. 22, ECF No. 62-23; Def.'s Ex. J, ECF No. 58-6 at 6. This improper grievance memo is not returned to Ratcliff until June 7. Pl.'s Ex. 22, ECF No. 62-23; Def.'s Ex. J, ECF No. 58-6 at 6.

- **May 13, 2021**: Ratcliff, without having received the rejection of his first-level grievance, files a second-level grievance again alleging that Caldarone was retaliating against him and asking for Caldarone to be reprimanded. Pl.'s Ex. 23, ECF No. 62-24 at 2–3; Def.'s Ex. J, ECF No. 58-6 at 15.

- **May 17, 2021**: NDOC rejects Ratcliff's second-level grievance because his claim of retaliation and the requested remedy for Caldarone to be reprimanded were never filed at the informal level. Pl.'s Ex. 24, ECF No. 62-25 at 2; Def.'s Ex. J, ECF No. 58-6 at 14. Ratcliff is told to resubmit with a new informal grievance within 5 days. *Id.*

- **June 7, 2021**: Ratcliff receives the rejection of his first-level grievance from March 19, 2021. Pl.'s Ex. 22, ECF No. 62-23 at 2; Def.'s Ex. J, ECF No. 58-6 at 6.

- **June 8, 2021:** Ratcliff again resubmits his second-level grievance asking for Caldarone to be reprimanded.[4] Pl.'s Ex. 25, ECF No. 62-26 at 3; Def.'s Ex. J, ECF No. 58-6 at 20.

- **June 9, 2021:** NDOC rejects Ratcliff's second-level grievance because of the remedy change and because his grievance had not been accepted at the first level, so his attempt to submit a second-level grievance was improper. Pl.'s Ex. 26, ECF No. 62-27 at 2; Def.'s Ex. J, ECF No. 58-6 at 18. Ratcliff is told to resubmit a new first-level grievance within 5 days. *Id.*

## III.   Discussion

Caldarone moves for summary judgment arguing that Ratcliff's claims against him are barred because he failed to exhaust his administrative remedies prior to filing suit. ECF No. 58 at 8–12. I agree.

### A.  The Prison Litigation Reform Act's exhaustion requirement

"In an effort to address the large number of prisoner complaints filed in federal court, Congress enacted the [PLRA]." *Jones v. Bock*, 549 U.S. 199, 202 (2007) (citing 42 U.S.C. § 1997e). Under the PLRA, a prisoner may not file any § 1983 civil rights suit unless they have exhausted the administrative remedies at the facility. 42 U.S.C. § 1997e(a); *Rodriguez v. Cnty. of L.A.*, 891 F.3d 776, 792 (9th Cir. 2018). The exhaustion requirement gives an agency the opportunity to correct its own mistakes before being dragged into federal court, and it promotes greater efficiency and economy in resolving claims. *McBride v. Lopez*, 807 F.3d 982, 987 (9th Cir. 2015). However, "a prisoner is excused from the exhaustion requirement in circumstances where administrative remedies are effectively unavailable. . . . ." *Rodriguez*, 891 F.3d at 792 (citing *McBride*, 807 F.3d at 987). "Failure to exhaust under the PLRA is 'an affirmative defense [that] the defendant must plead and prove.'" *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (quoting *Jones*, 549 U.S. at 204).

---

[4] Ratcliff does not mention retaliation in this grievance.

"The Ninth Circuit instructed in *Albino v. Baca* that a summary-judgment motion is the proper procedural device to resolve PLRA exhaustion questions." *Hobson v. Clark Cnty.*, 2019 WL 1442171, at *3 (D. Nev. Mar. 31, 2019) (citation omitted). It is "the defendant's burden is to prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." *Albino*, 747 F.3d at 1172. If this is accomplished, "the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.* "If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56." *Id.* at 1166.

### A.  SDCC's inmate grievance procedure

Exhaustion "demands compliance with an agency's deadlines and other critical procedural rules because no adjudication system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006). In Nevada, the remedies available to inmates are promulgated under Nevada Department of Corrections Administrative Regulation 740 ("AR 740"). AR 740's purpose is to "set forth the requirements and procedures of the administrative process that [Nevada Department of Corrections (NDOC)] inmates must utilize to resolve addressable grievances and claims including . . . any [] tort or civil rights claim relating to conditions of confinement." *Welch v. Liggett*, 2023 WL 158603, at *3 (D. Nev. Jan. 11, 2023). "An inmate whose grievance is denied in its entirety may appeal the grievance to the next level." *Id.* The grievance structure is essentially a multi-level dispute resolution mechanism, under which an inmate must satisfy each level's substantive and procedural requirements before filing a higher-level grievance. *Id.* It requires inmates to first pursue resolution via alternative means, "such as discussion with staff or submitting an inmate request form." *Id.* Once an inmate has exhausted alternative means, he may file an informal grievance. *Id.* If that fails to provide the requested relief, the inmate may file a first-level grievance, and if that fails, a second-level grievance. *Id.* An inmate exhausts his

administrative remedies either after a denial of the second-level grievance, or "if the [g]rievance is '[g]ranted' at any level." *Id.*

Additionally, if an inmate is suffering a life-threatening emergency, they may file an emergency grievance which will be reviewed within 24-hours of receipt and the inmate will receive a response "no later than is necessary to prevent serious injury or a breach of security." AR 740, Def. Ex. M, ECF No. 58–9 at 10. If NDOC ultimately deems the claim to be non-emergent, the inmate can file a grievance appeal commencing at the informal level. *Id.*

NDOC's policies seek to ensure that inmates have access to the grievance procedure while also preventing inmates from abusing the system. AR 740, Def.'s Ex. M, ECF No. 58-9 at 6. To that end, AR 740.04 provides a list of inmate actions involving the grievance procedure that are deemed abusive. *Id.* at 7. AR 740.04, states

> It is considered abuse of the inmate grievance procedure when an inmate files a grievance that contains, but is not limited to: (A) A threat of serious bodily injury to a specific individual; (B) Specific claims or incidents previously filed by the same inmate; (C) Filing two (2) or more emergency grievances in a seven (7) day week period, Monday through Sunday which is deemed not to be emergencies may result in disciplinary action against the inmate for abuse of the grievance system....;(D) Obscene, profane, and derogatory language; (E) Contains more than one (1) appropriate issue, per grievance; (F) **The claim or requested remedy changes or is modified from one level to another**; (G) More than two (2) continuation forms (DOC 3097) per grievance; (H) Alteration of the grievance forms or continuation forms. This includes writing more than one line, on each line provided on the grievance form.

*Id.* (emphasis added).

If an inmate files a grievance in a way that violates AR 740.04, the Grievance Coordinator is required to return the original improper grievance with a Form DOC-3098 "Improper Grievance Memorandum," noting the specific violation. *Id.* Grievances that result in an Improper Grievance Memorandum will be deemed "not accepted" and not be responded to under AR 740. *Id.* This is different than a grievance being "rejected," which allows an inmate to proceed to the next level of the process. *Id.* at 6.

**B. Ratcliff failed to exhaust his administrative remedies**

Caldarone has met his burden demonstrating that Ratcliff failed to exhaust his administrative remedies on the deliberate indifference claim. The record demonstrates that on December 10, 2020, Ratcliff filed his first informal grievance relating to his dental issues. Grievance, Pl.'s Ex. 12, ECF No. 62-13; Def.'s Ex. J, ECF No. 58-6 at 3. Ratcliff states his requested remedy as "need[ing] to be seen by dental." Pl.'s Ex. 12, ECF No. 62-13 at 3; Def.'s Ex. J, ECF No. 58-6 at 4. On January 8, 2021, Ratcliff was seen by the dentist. Pl.'s Ex. 19, ECF No. 62-20; Def.'s Ex. J, ECF No. 58-6 at 2. Subsequently, because Ratcliff's requested remedy had been granted and he was seen by the dentist, on January 30, 2021, the Grievance Coordinator denied Ratcliff's informal grievance. *Id.* Then, pursuant to AR 740, Ratcliff filed a first-level grievance. Pl.'s Ex. 21, ECF No. 62-22; Def. Ex. J, ECF No. 58-6 at 7–9. *See Welch*, WL 158603, at *3 (describing grievance process); *see also Houston v. Downey*, 2024 U.S. Dist. LEXIS 147324, at *7 (D. Nev. Aug. 19, 2024) (same). However, in Ratcliff's first-level grievance, he changed his remedy from needing to be seen by the dentist to requesting a "verbal reprimand to the dentist on how to treat patients with respect and how to talk to people with respect." Pl.'s Ex. 21, ECF No. 62-22 at 4; Def.'s Ex. J, ECF No. 58-6 at 9. As explained above, this change or modification in remedy from one level of the grievance process to another is a violation of the inmate grievance procedure. *See* ECF No. 58-9 at 6. Indeed, as noted by the Grievance Coordinator when the first-level grievance was returned as an improper grievance "it is [a]buse of the Inmate Grievance Procedure if, '[t]he claim or requested remedy changes or is modified from one level to another." Pl.'s Ex. 22, ECF No. 62-23; Def.'s Ex. J, ECF No. 58-6 at 6 (citing AR 740.09 2G[5]). Because the grievance was not accepted, it could not properly proceed to the next level. *Id.*; *see* ECF No. 58-9 at 6–8 (describing grievance process).

---

[5] The Grievance Coordinator cited the wrong AR section in rejecting this grievance; however, the result is the same when applying the proper section which is found at AR 740.04 2F (stating that it is abuse of the inmate grievance procedure if the claim or requested remedy changes or is modified from one level to another). *See* Def.'s Ex. M, ECF No. 58-9 at 7.

Before Ratcliff received the non-acceptance of his first-level grievance, he filed a second-level grievance. Pl.'s Ex. 23, ECF No. 62-24 at 2–3; Def.'s Ex. J, ECF No. 58-6 at 15–16. On May 17, 2021, the Grievance Coordinator returned the second-level grievance to Ratcliff as rejected because his "grievance was not accepted at the informal level." Pl.'s Ex. 24, ECF No. 62-25; Def.'s Ex. J, ECF No. 58-6 at 14. Ratcliff was told to resubmit a new informal grievance within five days of receipt of the rejection. *Id.* On June 8, 2021, instead of filing a new informal grievance as directed, Ratcliff filed another second-level grievance. Pl.'s Ex. 25, ECF No. 62-26; Def.'s Ex. J, ECF No. 58-6 at 19. On June 9, 2021, the Grievance Coordinator again returned the grievance and told Ratcliff to resubmit. Pl.'s Ex. 26, ECF No. 62-27; Def.'s Ex. J, ECF No. 58-6 at 18. Despite these clear instructions, there is nothing in the record demonstrating that Ratcliff followed the Grievance Coordinator's instructions to resubmit the informal grievance. *See* ECF No. 58-6. Ratcliff seemingly abandoned his grievance related to dental care and attempted instead to pursue a grievance related to his belief that Caldarone should be reprimanded. Ratcliff did not properly exhaust his administrative remedies for either requested remedy, and therefore failed to exhaust his deliberate indifference claim.

Additionally, Ratcliff failed to exhaust his administrative remedies on the retaliation claim. Nowhere in the informal grievance does Ratcliff allege that Calderon was delaying his treatment or providing insufficient treatment in retaliation for Ratcliff's kites. Pl.'s Ex. 12, ECF No. 62-13; Def.'s Ex. J, ECF No. 58-6 at 11–12. However, in the first-level grievance, Ratcliff states that Caldarone's delay in treatment was retaliation. Pl.'s Ex. 21, ECF No. 62-22 at 4; Def.'s Ex. J, ECF No. 58-6 at 9. Ratcliff also alleges retaliation in his initial second-level complaint. Pl.'s Ex. 23, ECF No. 62-24 at 3; Def.'s Ex. J, ECF No. 58-6 at 16. Again, it is [a]buse of the Inmate Grievance Procedure if, '[t]he claim or requested remedy changes or is modified from on level to another." ECF No. 58-6 at 6 (citing AR 740.09 2G[6]). Because he added the retaliation claims in

---

[6] As noted above, the section is found at AR 740.04 2F. Def.'s Ex. M, ECF No. 58-9 at 7.

the first-level and second-level grievance and did not include them in his informal grievance, Ratcliff failed to exhaust his administrative remedies on this claim.

Once the defendant has proven that there was an available administrative remedy and that the inmate did not exhaust that remedy, the burden shifts to the inmate to provide evidence demonstrating that there is something in his particular case that made the administrative remedies effectively unavailable to him. *Albino*, 747 F.3d at 1172.

In *Ross v. Blake*, the Supreme Court held that an inmate is only required to exhaust grievance procedures "that are capable of use to obtain some relief for the action complained of." 578 U.S. 632, 643 (2016). The Court then provided a list of examples demonstrating when a grievance procedure is unavailable (1) when officers are unable or consistently unwilling to provide relief to aggrieved inmates making the procedure a dead end, (2) if the procedure contains mechanisms so opaque that no inmate can discern or navigate it or (3) if prison administrators thwart inmates from taking advantage of the process through or misrepresentation, intimidation. *Id.* at 644. *Ross* followed a series of Ninth Circuit cases that similarly hold that an inmate is excused from exhausting his administrative remedies when he demonstrates that he attempted to exhaust his administrative remedies but was precluded from doing so due to the actions of prison officials. *See Nunez v. Duncan*, 591 F.3d 1217, 1226 (9th Cir. 2010) (holding that administrative remedy was not available when the prison warden incorrectly implied that an inmate needed access to a specific policy that was incredibly difficult to find in order to bring a timely administrative appeal); *Sapp v. Kimbrell*, 623 F.3d 813, 823 (9th Cir. 2010) (holding that administrative remedies are not available where prison officials improperly screen an inmate's administrative appeal); *Marella v. Terhune*, 568 F.3d 1024, 1027–28 (9th Cir. 2009) (per curium) (finding that administrative remedies were not available when the inmate did not have access to the necessary grievance forms within the prison's time limits for filing a grievance).

The evidence in this case sets it apart from those addressed in *Ross.* Ratcliff does not allege that any prison official's actions prevented him from exhausting his administrative remedies. Resp., ECF No. 64 at 9–10. Nor does Ratcliff allege that there were external circumstances outside of his control preventing him from utilizing the inmate grievance process. *Id.* To the contrary, Ratcliff's filing of an informal grievance, first-level grievance, and second-level grievance demonstrates that administrative remedies were readily available to him.

Instead, Ratcliff argues that the administrative remedies were essentially unavailable to him because his pleas for dental treatment went "ignored for months[.]" ECF No. 64 at 9. Ratcliff also states that "[n]othing in Defendant's behavior, nor the behavior of the Nevada Department of Corrections provided any indication that Defendant would attempt to resolve Plaintiff's problems administratively." *Id.* To support his argument, Ratcliff cites to *Cervantes v. Las Vegas Metro. Police Dep't Det. Serv. Div.,* which held that an inmate properly exhausted his administrative remedies for his deliberate indifference claim despite not properly filing a grievance because the inmate nonetheless expressly raised his concerns that his medical requests were not being processed in a timely manner. 2021 WL 9217679, at *6 (D. Nev. Feb. 23, 2021). I do not find *Cervantes* to be persuasive here. The situation that occurred in *Cervantes* occurred in the years before the Covid-19 pandemic. The underlying allegations that gave rise to this action unfortunately occurred both before, and then well into, the first year of the pandemic. Various courts have held that delays in dental or medical procedures due to Covid-19 concerns did not give rise to a claim of deliberate indifference." *Gelazela v. United States*, 2024 WL 3675609, at *15 (E.D. Cal. Aug. 5, 2024) (collecting cases).

Moreover, the evidence does not support Ratcliff had a similar experience to Cervantes. Certainly, the court is concerned that Ratcliff had to extract his own tooth. However, Cervantes did not reject treatment by the dentist. *See Cervantes*, 2021 WL 9217679, at *2–3. The record here reflects that Ratcliff was seen by the dentist and twice rejected the recommended treatment— extraction—and requested another form of treatment in lieu thereof. *See* Def.'s Ex. C, ECF No.

60-3 at 7 (Release of Liability for Refusal of Health Care Treatment signed and dated on August 6, 2019), *id.* at 8 (Release of Liability for Refusal of Health Care Treatment signed and dated on February 12, 2020).[7] Ratcliff preferred a different course of treatment at the time. But a showing of nothing more than a difference of medical opinion as to the need to pursue one course of treatment over another does not, as a matter of law, establish deliberate indifference. *Toguchi v. Chung*, 391 F.3d 1051, 1058–60 (9th Cir. 2004); *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989); *Mayfield v. Craven*, 433 F.2d 873, 874 (9th Cir. 1970). To establish deliberate indifference on a claim involving choices between alternative courses of treatment, a plaintiff must show that the course of treatment was (1) medically unacceptable under the circumstances or (2) chosen in conscious disregard of an excessive risk to plaintiff's health. *Toguchi*, 391 F.3d at 1058; *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Ratcliff failed to establish these elements because there is no evidence that extraction was not medically acceptable.

Also, the facts of this case are further distinguishable from *Cervantes*, where the court found that the inmate's grievances, though not filed in accordance with requirements, were "remarkably consistent, reiterating a desire to see a dentist 'ASAP.'" 2021 WL 9217679, at *6. In fact, Cervantes alleged that he suffered for six days while repeatedly asking for help, but it was not until his face "swelled up to the size of a baseball and [he] passed out from pain" did he finally receive the necessary medical care. *Id.* at *2. Like Cervantes, Ratcliff was seen by the dentist after he filed his informal and emergency grievances. ECF No. 62 at 4; *Cervantes*, 2021 WL 9217679, at *1–2. But unlike Cervantes, Ratcliff's grievances were **not** consistent. After he rejected the recommended treatment (extraction), he then filed his informal grievance, and when his emergency grievance was subsequently filed, he was seen by Caldarone the same day (January 8, 2021) where he then consented to the extraction and/or dental treatment. Pl.'s Ex. 19,

---

[7] The court notes that this refusal form notes "Refused to treat me," that the court presumes was written in by Ratcliff. ECF No. 60-3 at 8. However, Ratcliff signed the refusal of treatment form at that time for tooth pain.

ECF No. 62-20; Def.'s Ex. J, ECF No. 58-6 at 10; Def.'s Ex. C, ECF No. 60-3 at 9. It was not until *after* he was treated for his tooth pain that Ratcliff filed his first level grievance and changed the requested remedy from needing to see the dentist to requesting the dentist be reprimanded for his unprofessional comments. Pl.'s Ex. 21, ECF No. 62-22 at 4; Def.'s Ex. J, ECF No. 58-6 at 9. Ratcliff himself states in one of his second-level grievances that "when the deplorable actions of the NDOC medical staff changed his remedy changed." Pl.'s Ex. 25, ECF No. 62-26 at 2; Def.'s Ex. J, ECF No. 58-6 at 19. "First I wanted treatment" and then "once I was seen [Caldarone] was saying inappropriate comments to me[.]" *Id.*

Additionally, although Ratcliff did not receive the news that his first-level grievance had not been accepted for a few months, he was no longer requesting the remedy of being seen by the dentist. Instead, he was asking for Caldarone to be reprimanded. *Compare* Pl.'s Ex. 12, ECF No. 62-13 at 3 *with* Pl.'s Ex. 21, ECF No. 62-22 at 4. This request is neither time sensitive nor a request for immediate medical attention. Ratcliff does not provide any argument that explains why the grievance procedure was unavailable to him for his grievance regarding how he was treated by Calderone and his requested reprimand remedy. *See* ECF No. 64 at 9–10. And Ratcliff does not allege that any prison official took any action to prevent him from re-filing his informal grievance in a way that comports with the required procedure. *Id.* Consequently, I find that Ratcliff's Eighth Amendment claim against Caldarone is barred pursuant to the PLRA. Caldarone's motion for summary judgment is granted as to the deliberate indifference claim.

Further, Ratcliff does not successfully demonstrate that Caldarone's actions were retaliation for Ratcliff's filing of kites and grievances. To state a viable First Amendment retaliation, claim in the prison context, a plaintiff must allege: "(1) [a]n assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson,* 408 F.3d 559, 567–68 (9th Cir. 2005). I note first that Ratcliff's retaliation allegation is unclear

as it is not discussed in his summary judgment motion or his response in opposition to Caldarone's summary judgment motion. ECF Nos. 62, 64. Nonetheless, Ratcliff does not provide any evidence that Caldarone delayed his treatment or made the derogatory comment because of the kites and grievances as set forth in his amended complaint, so summary judgment is appropriate for this claim. *See Davis v. Dep't of Corr.*, 2023 WL 3615671, at *2 (9th Cir. May 24, 2023) (finding that district court properly granted summary judgment on a first Amendment retaliation claim where the inmate offered no evidence that the prison sergeant failed to replace his mattress because of the inmate's regular complaints). Ratcliff merely alleges that Caldarone was "clearly and visibly upset, agitated and aggressive towards Plaintiff because Plaintiff had sought treatment[8]" but provides no nexus connecting Caldarone's demeanor to Ratcliff's complaints, much less how his ability to administratively grieve Caldarone's behavior had prohibited him or chilled his ability to exercise his rights in any way. Furthermore, Ratcliff does not cite any specific facts that raise a triable issue as to whether any delay in treatment did not reasonably advance the legitimate correctional goals especially considering the Covid-19 pandemic. *See McDaniels v. Preito*, 812 F. App'x. 697 (9th Cir. 2020) (affirming district court's grant of summary judgment when the inmate failed to cite facts raising a triable issue as to whether the prison's policy or the prison officials' actions did not reasonably advance the legitimate correctional goals of security and discipline). On the contrary, the evidence provided by Caldarone shows that the delays were related to the Covid-19 pandemic, or because the facility reviewed Ratcliff's kites and determined they were not emergent. Then, once he filed an emergency request to be seen, he was seen the same day. The record clearly reflects that Ratcliff has been able to utilize the grievance process and was not prevented from doing so. Therefore, I grant summary judgment to Caldarone on the retaliation claim.

---

[8] *See* ECF No. 50 at 3–5.

Because I grant summary judgment to Caldarone on failure to exhaust, I do not address Caldarone's other summary judgment arguments on the merits. Additionally, because I grant summary judgment to Caldarone, I subsequently deny Ratcliff's motion for summary judgment for failure to exhaust.

**IV.     Conclusion**

IT IS HEREBY ORDERED that Caldarone's motion for summary judgment **[ECF No. 58] is GRANTED**.

IT IS FURTHER ORDERED that Ratcliff's motion for summary judgment **[ECF No. 62] is DENIED.**

The Clerk of Court is kindly instructed to enter judgment accordingly and to close this case.

Dated: September 24, 2024

_____
Cristina D. Silva
United States District Judge